UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CARLEEN DOHERTY

        Plaintiff,

       v.                      **REPORT AND RECOMMENDATION**
                                      **1:07-CV-0954 (FJS)**

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Carleen Doherty brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying her applications for benefits was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds the Commissioner's decision is supported by substantial evidence and determined in accordance with the applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment on the pleadings be denied and Defendant's cross-motion for judgment on the pleadings be

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated April 10, 2009.

granted.[3]

## II.   Background

On June 29, 2004, Plaintiff, filed an application for SSI and DIB, claiming disability since December 15, 2001, because of asthma, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, and manic depression (R. at 47-49, 53-56, 66, 83).[4] Her applications were denied initially on December 29, 2004 (R. at 24-29, 66). On February 22, 2005, Plaintiff filed a timely request for a hearing (R. at 30).

On May 5, 2006, Plaintiff and her attorney appeared before the ALJ (R. at 218-36).The ALJ considered the case *de novo* and, on June 30, 2006, issued a decision finding Plaintiff was not disabled (R. at 14-23). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on July 25, 2007 (R. at 3-6). On September 14, 2007, Plaintiff filed this action.

## III.   Discussion

### A.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."

F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

### B. Analysis

Based on the entire record, because the ALJ applied the proper legal standards and his decision is supported by substantial evidence, the Court recommends the Commissioner's decision be upheld.

### 1.    The Commissioner's Decision

The ALJ followed the sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Act. The ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date (R. at 16). The ALJ determined that Plaintiff had the following severe combination of impairments: "attention deficit

disorder, dysthymic disorder and polysubstance abuse, in remission." Id.  However, the

ALJ concluded that Plaintiff's severe impairments did not, individually or in combination,

meet a Listing (R. at 18). The ALJ found that Plaintiff had the residual functional

capacity ("RFC") to "perform simple, unskilled work at any exertional level, which takes

into account occasional problems with maintaining attention and concentration and

understanding, remembering and carrying out instructions" (R. at 19). Considering

Plaintiff's RFC the ALJ concluded Plaintiff could perform her past relevant work as a deli

worker, both as she had actually performed the job and as the job was generally

performed (R. at 22). Therefore, the ALJ concluded that Plaintiff was not disabled (R. at

22-23).

### 2.        Plaintiff's Claims

Plaintiff argues (a) the ALJ failed to comply with 20 C.F.R. § 404.1527 by not

according adequate weight to the treating physician's opinions; (b) the ALJ failed to

clarify the treating physician's opinion; (c) the Appeals Council erred when it refused to

remand the decision in light of new evidence; (d) the ALJ improperly failed to "comment

on or clarify claimant's demeanor at the hearing"; and (e) the ALJ improperly failed  to

"even reference the fact that the claimant was found disabled by Columbia County

Department of Social Services" in violation of "HALLEX II-1-11-12."' Plaintiff's Brief, pp.

1-2.

### a.  The ALJ Gave Proper Weight to the Treating Physician's Opinions

An ALJ will give controlling weight to a "treating source's opinion on the issue(s)

of the nature and severity of [a claimant's] impairment(s)" if the opinion is "well-

5

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999). When an ALJ does not give the treating source's opinion controlling weight, he will apply the listed factors "in determining the weight to give the opinion." 20 C.F.R. § 404.1527(d)(2). The listed factors are: (i) length of the treatment relationship and frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the evidence supporting the opinion; (iv) the opinion's consistency with the whole record; (v) whether the source is a specialist; and (vi) other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). Finally, the regulations provide that the ALJ "will always give good reasons . . . for the weight [he] give[s] [a] treating source's opinion." Id.

In the instant case, the ALJ gave "little weight" to the opinions of (R. at 21). Dr. Kudria submitted her treatment notes from July 2004 through March 2006 (R. at 182-90); two employability assessments, one dated March 18, 2005 (R. at 160-61) and one dated February 21, 2006 (R. at 197-98), and; two other written opinions, one dated July 16, 2004 (R. at 190) and the other dated May 24, 2006 (R. at 215). On July 16, 2004, Dr. Kudria wrote on a prescription form, "[Patient] under my care for ADHD. She is taking Strattera[5] and trazodone.[6] She can not stop this [sic] meds. She is not able to work now [secondary] [to] her medical problems" (R. at 190). In both employability assessments, Dr. Kudria indicated that Plaintiff was moderately limited in her abilities to

---

[5] Strattera is a brand name for atomoxetine hydrochloride and indicated for use in treating ADHD. Physicians' Desk Reference 1864-65 (63rd ed. 2009) [hereinafter PDR].
[6] Trazodone is indicated for the treatment of depression. RxList, Desyrel(Trazodone Hydrochloride), http://www.rxlist.com/desyrel-drug.htm (last visited May, 5, 2009).

stand, climb, understand and remember instructions, and interact appropriately with others (R. at 160, 197) and very limited in her abilities to sit, lift, carry, push, pull, bend, carry out instructions, maintain attention and concentration, make simple decisions, and function in a work setting at a consistent pace[7] (R. at 160, 197). In the March 2005 employability assessment, Dr. Kudria also indicated Plaintiff was very limited in her ability to maintain socially appropriate behavior without exhibiting behavior extremes (R. at 160). By February 2006, Dr. Kudria's found Plaintiff was only moderately limited in her ability to maintain socially appropriate behavior without exhibiting extremes (R. at 197). On May 24, 2006, Dr. Kudria wrote on another prescription form, "[Patient] is under my care. She needs psychiatric evaluating RE: possible ADD. Unable to function in a regular work environment" (R. at 215). Dr. Kudria's treatment notes cover six visits over a period of approximately two years (R. at 182-89). On each occasion, Dr. Kudria performed a physical examination but noted no abnormalities (R. at 182, 183, 185, 187, 188, 189). There is no indication Dr. Kudria ever performed a mental status examination or cognitive examination. Nor is there any indication Dr. Kudria ordered any clinical or laboratory diagnostic techniques relevant to assessing ADHD or mental impairments. At almost every visit Plaintiff complained of her insomnia, which Dr. Kudria treated with Ambien[8] (R. at 185, 187-89). The only other medication Dr. Kudria prescribed to Plaintiff was Albuterol, for her asthma (R. at 188); see also (R. at 191-95) (CVS prescription

---

[7] Dr. Kudria indicated these limitations by checking off boxes in a grid (R. at 160-61, 197-98). On the February 2006 employability assessment there is a partial marking that could be interpreted to indicate that Dr. Kudria found Plaintiff had no limitation in her ability to function in a work setting at a consistent pace (R. at 197). However, upon inspection, the Court believes this is merely an extension of the marking indicating that Plaintiff has no limitation in personal hygiene (R. at 197) which is consistent with Dr. Kudria's earlier opinion that Plaintiff had no limitation in her standards of personal hygiene (R. at 160) and logically results in only one mark for each functional area (R. at 197).

[8] Ambien is a preparation of zolpidem tartrate indicated for use in the short term treatment of insomnia. PDR, supra note 5, at 2692.

records through April 2006 indicating that Dr. Kudria only prescribed medications for

Plaintiff's insomnia and asthma). On Plaintiff's April 27, 2005 visit, Dr. Kudria noted that

Plaintiff was no longer taking Strattera or trazodone (R. at 187). Finally, Dr. Kudria's

office notes indicate that Plaintiff was treated by mental health services on a regular

basis (R. at 183-87). With respect to the findings of Dr. Kudria, the ALJ reasoned:

> While Dr. Kudria examined the claimant on a regular basis, her objective evidence medical evidence and the objective evidence of other treating health professionals does not support such stringent limitations. The claimant did not voice any complaints to Dr. Kudria, other than that of insomnia. Additionally, Dr. Kudria does not specialize in mental health and is not qualified to properly assess the claimant's mental status. While she also stated that the claimant was very limited in her abilities to sit, lift, carry, push, pull and bend, there is simply no objective medical evidence to support these physical limitations. Dr. Kudria consistently noted that the claimant exhibited no physical abnormalities. All joints revealed full range of motion. Her muscle strength and reflexes were normal. She exhibited a normal gait. At the hearing, the claimant stated that her inability to sit or stand was related to her mental condition and did not have anything to do with a physical impairment.

(R. at 21).

After carefully reviewing the record, the Court concludes that the ALJ properly

applied 20 C.F.R. § 404.1527 in weighing Dr. Kudria's opinion. The ALJ concluded that

Dr. Kudria's opinion was not entitled to controlling weight because it was not well-

supported and it was inconsistent. In so concluding, the ALJ considered the factors

listed in 20 C.F.R. § 404.1527. He considered that Dr. Kudria examined Plaintiff on a

regular basis and had formed a treatment relationship with Plaintiff. However, the ALJ

also considered that the nature of that treatment relationship was limited to physical

examinations, and not to mental status or cognitive examinations, and that Plaintiff's

only consistent complaints to Dr. Kudria concerned her insomnia, and not her ADHD or

depression (R. at 181-90). Furthermore, the ALJ considered the lack of evidence supporting Dr. Kudria's opinions and that her opinions were inconsistent with other substantial evidence in the record. The ALJ also noted that Dr. Kudria did not specialize in mental health. Instead, Dr. Kudria notes that her specialty is family practice (R. at 161, 198). Finally, the ALJ considered the incongruity between Dr. Kudria's opinion that Plaintiff suffered multiple physical limitations due to her mental condition and the fact that every examination of those same physical functions was completely normal. The ALJ considered all the listed factors in 20 C.F.R. § 404.1527 and provided "good reasons" for assigning little weight to Dr. Kudria's opinion.

Moreover, the Court finds that substantial evidence supports the ALJ's conclusions that Dr. Kudria's opinions were not well-supported and were inconsistent with other substantial evidence. For example, the ALJ correctly noted that there is simply no evidence in the record to support Dr. Kudria's opinions that Plaintiff had physical limitations, such as a limited ability to lift, carry, push, pull, bend, sit, stand, and climb stairs. No other medical source found Plaintiff to have such physical limitations (R. at 145-59, 208-14, 216-216A).[9] Similarly, Dr. Kudria's notes and opinions regarding Plaintiff's mental health were inconsistent with the notes, treatment, and opinions from Columbia County Mental Health Center ("CCMHC"), Plaintiff's treating source for her mental health problems. For example, Angela Schwartz, a licensed clinical social worker at CCMHC, treated Plaintiff in monthly individual therapy sessions from October 21, 2004 through May 11, 2006 (R. at 209). Nurse practitioner, Mary Ranges, worked with Ms. Schwartz and prescribed Plaintiff's medication (R. at 191-95, 223). In July of

---

[9] The record shows that Plaintiff had arthroscopic surgery on her right knee, but evidence indicates she fully recovered and she testified that her knee was not a problem (R. at 164-79, 199-207, 231-32).

2004 Dr. Kudria opined that Plaintiff could not stop taking Strattera and trazodone (R. at 187). However, Plaintiff's prescription records indicate that by January of 2005 Nurse Ranges had already switched Plaintiff from Strattera and trazodone to Seroquel[10] (R. at 191). Nurse Ranges then prescribed Doxepin,[11] and later tried Mirtazapine[12] and Paroxetine[13] (R. at 191-95). Dr. Kudria did no become aware that  Plaintiff was no longer taking Strattera or trazodone until April 27, 2005, as indicated by her treatment notes (R. at 187, 190). Additionally, on May 24, 2006, Dr. Kudria opined that Plaintiff required psychiatric evaluation for her ADHD (R. at 215). However, the treatment summary from CCMHC indicates that Nurse Ranges, Plaintiff's "prescriber," "did not feel that [Plaintiff] met the criteria" for an ADHD diagnosis (R. at 209). While Ms. Schwartz maintained an ADHD diagnosis for Plaintiff, on May 11, 2006, she terminated Plaintiff's treatment at CCMHC because Plaintiff no longer needed individual therapy (R. at 209). Dr. Kudria claimed to be treating Plaintiff's ADHD, but the evidence of record shows that Ms. Schwartz and Nurse Ranges at CCMHC were Plaintiff's treating sources for her mental health impairments. And their assessments and treatment of Plaintiff contradict Dr. Kudria's opinions (R. at 209-14).

Finally, the Court notes that those portions of Dr. Kudria's opinions consistent with other substantial evidence are included in the ALJ's RFC determination—namely, Plaintiff's limitations in maintaining attention and concentration, and limitations in understanding, remembering and carrying out instructions. Compare (R. at 160-61, 197-

---

[10] Seroquel is a preparation of quetiapine fumarate that is indicated for the treatment of depressive episodes associated with bipolar disorder. RxList, Seroquel, http://www.rxlist.com/seroquel-drug.htm (last visited May 5, 2009).
[11] Doxepin is indicated for use in treating depression and anxiety. RxList, Sinequan (Doxepine), http://www.rxlist.com/sinequan-drug.htm (last visited May 5, 2009).
[12] Mirtazapine is indicated for the treatment of major depressive disorder. PDR, supra note 5, at 2924-25.
[13] Paroxetine is indicated for use in the treatment of major depressive disorder. Id. at 1535.

98) (Dr. Kudria's employability assessments) with (R. at 21) (RFC). Thus, based on a

review of the record, the Court concludes the ALJ properly applied 20 C.F.R. §

404.1527 and substantial evidence supports his conclusion that Dr. Kudria's opinion is

not entitled to controlling weight.

### b.  The ALJ Satisfied His Duty to Develop the Record

Plaintiff also argues that the ALJ "failed to clarify" Dr. Kudria's "analysis of the

claimant's psychiatric problem." Plaintiff's Brief, p. 4. Although it is unclear from

plaintiff's brief, based on the law Plaintiff cites, the Court assumes that Plaintiff is

generally arguing that the ALJ had a duty to develop the record.

In the Second Circuit, an ALJ has an affirmative duty to fully and fairly develop

the record *sua sponte*, even when a claimant is represented by counsel. Perez v.

Chater, 77 F.3d 41, 47 (2d Cir. 1996); see also 20 C.F.R. §§ 404.1512(d), 416.912(d)

(describing the Commissioner's duty to develop a claimant's medical history for at least

the twelve-month period prior to the disability application); 20 C.F.R. § 404.1512(e)(1),

416.912(e)(1) (describing the Commissioner's duty to seek additional information from a

treating source when the evidence provided is inadequate to make a determination).

Thus, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill

any clear gaps in the administrative record." Rosa, 168 F.3d at 79 (citing Schaal v.

Apfel, 134 F.3d 496, 505 (2d Cir. 1998)). However, "where there are no obvious gaps in

the administrative record, and where the ALJ already possesses a 'complete medical

history,' the ALJ is under no obligation to seek additional information in advance of

rejecting a benefits claim." Rosa, 168 F.3d at 79 n.5 (citing Perez, 77 F.3d at 48)

(sparse notes, incomplete record of medical visits, and brief, conclusory assessments

constituted gap in the medical record requiring ALJ development); see, e.g., Schultz v. Astrue, No. 04-CV-1369, 2008 WL 728925, at *8 (N.D.N.Y. Mar. 18, 2008) (citing Rosa, 168 F.3d at 79) ("[An] ALJ does not need to attempt to obtain every extant record of the claimant's doctor visits when the information on the record is otherwise sufficient to make a determination, and need not request more detailed information from the treating physician if the physician's report is a sufficient basis on which to conclude that the claimant is not disabled."). Moreover, as the Second Circuit has explained, "[w]hile the opinions of a treating physician deserve special respect, . . . they need not be given controlling weight when they are contradicted by other substantial evidence . . ." Veino v. Barnhart, 312 F.3d 578, 588 (2nd Cir. 2002) (citations omitted); see, e.g., Hogue v. Barnhart, No. 03-CV-4963, 2005 WL 1036336, at *14 (S.D.N.Y. 2005) (finding the ALJ properly rejected treating physicians' opinions without re-contacting where he relied on substantial evidence from other properly submitted medical opinions)

        After careful review of the record, the Court concludes that the ALJ satisfied his duty to develop the record. There is no indication that the record was incomplete or ambiguous. To the contrary, the ALJ had before him a comprehensive medical history. The record included Dr. Kudria's treatment notes and opinions from July 2004 through May 2006 (R. at 160-61, 182-90, 197-98, 215), medical records of Plaintiff's stay at Conifer Park from June 3, 2004 through June 17, 2004 (R. at 145-59), a summary of Plaintiff's treatment at CCMHC from October 21, 2004 through May 11, 2006 (R. at 208-14), and notes from an assessment by psychiatric nurse practitioner Cathy Darling on August 30, 2006 (R. at 216-216A). Moreover, the discord between Dr. Kudria's opinions and other medical evidence did not require the ALJ to seek more evidence, but to weigh

the evidence at hand. Veino, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). As discussed above, the ALJ appropriately determined that Dr. Kudria's opinions were contradicted by other substantial evidence in the record and therefore not entitled to controlling weight. See Balsamo v. Chater 142 F.3d 75, 81 (2d Cir. 1998) (internal punctuation omitted) (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)) ("[A]n ALJ is free . . . to choose between properly submitted medical opinions."). As another district court has eloquently explained, the ALJ's function in weighing the evidence would be "rendered nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his opinion to the evidence." Rebull v. Massanari, 240 F.Supp.2d 265, 273 (S.D.N.Y. 2002). For these reasons, the Court concludes that it was not necessary for the ALJ to re-contact Dr. Kudria to further develop her opinions.

### c. The Appeals Council Did Not Err in Finding the New Evidence Was Not Sufficient to Require Remand

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez, 77 F.3d at 45. The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b). "'Weight of the evidence' is defined as the balance or preponderance of evidence; the inclination of the greater amount of credible evidence to support one side of the issue rather than the other." HALLEX: Hearings, Appeals and Litigation Manual I-

13

3-3-4 (S.S.A. 2009), *available at* http://www.ssa.gov/OP_Home/hallex/I-03/I-3-3-4.html.
The role of the district court is to review the entire record, including the new evidence,
and determine whether the determination was in conformity with the regulations, and
"whether there is substantial evidence to support the decision of the Commissioner."
Perez, 77 F.3d at 46; see 42 U.S.C. § 405(g) (sentence five); see, e.g., Woodford v.
Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y. 2000) (concluding that the "Appeals Council
erred when it determined that [the new] evidence was insufficient to trigger review of the
ALJ's decision").

 In this case, the new evidence submitted to the Appeals Council consisted of an
evaluation conducted by Nurse Darling on August 30, 2006 (R. at 216-216A).[14] The
Appeals Council considered this new evidence and noted that it self-evidently did not
apply to the time period on or before the ALJ's decision, which was dated June 30, 2006
(R. at 4). Even though the evidence was not "new and material," the Appeals Council
considered it and concluded that it was not a basis for remanding the ALJ's decision. Id.
The Court agrees. Nurse Darling's assessment was consistent with the ALJ's
determination and other substantial evidence of record (R. at 216-216A). Nurse Darling
observed that Plaintiff was "restless and her arms were in continual motion during the
interview," and that her short term memory was "impaired," but Plaintiff's speech,
thoughts, cognition, and long term memory were normal (R. at 216A). Nurse Darling
indicated Plaintiff's problems were difficulty concentrating and staying focused, poor

---

[14] Plaintiff's Brief characterizes this assessment as an opinion by Dr. Dennis Marcus, M.D. Although the
assessment is on Dr. Marcus' letterhead, it is signed by Cathy Darling, NPP (R. at 216-126A).
Furthermore, a portion of the assessment recommends that Plaintiff consult "with a psychiatrist to be
assess for psychotropic medication," which indicates that the instant assessment was not by a
psychiatrist (R. at 216A). Thus, the Court concludes that the assessment is not an opinion from Dr.
Marcus.

memory, depressed mood, and anxiety. Id. She assigned Plaintiff a Global Assessment

of Functioning ("GAF") score of 45.[15] Id. This is generally consistent with the ALJ's

conclusion that Plaintiff has limited abilities to maintain attention and concentration and

to understand, remember and carry out instruction (R. at 21). Although Nurse Darling's

assessment that Plaintiff had a GAF score of 45 indicates greater limitations than the

ALJ's RFC, weighed against the other evidence of record and considering the source of

the assessment, it is insufficient to trigger review of the ALJ's decision. See 20 C.F.R.

§§ 404.1527(d), 416.927(d) (requiring an ALJ to evaluate every medical opinion); 20

C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining medical opinions as statements from

acceptable medical sources);  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (stating

nurse practitioners are not acceptable medical sources); see also Mongeur v. Heckler,

722 F.2d 1033, 1039 n. 2 (2d Cir.1983) ("the diagnosis of a nurse practitioner should not

be given the extra weight accorded a treating physician."); Alvarado v. Barnhart, 432

F.Supp.2d 312, 319-20 (W.D.N.Y. 2006) (upholding the Appeals Council's denial of

review where new evidence was contrary to the evidence of record). Therefore, the

Court concludes that the Appeals Council did not err when it declined to remand the

ALJ's decision based on Nurse Darling's report.

### d.  The ALJ Was Not Required to Comment on Plaintiff's Demeanor at the Hearing

Plaintiff also argues that the ALJ erred in failing to comment on Plaintiff's

demeanor in the hearing, which Plaintiff's counsel characterizes as a "whirlwind of

---

[15] The GAF scale ranks psychological, social, and occupational functioning on a continuum of mental health, from 1 to 100, where the higher numbers indicate  superior functioning. A GAF score of 41 to 50 indicates "serious symptoms OR any serious impairment in social, occupation, or school functioning." Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (Am. Psychiatric Ass'n, 4th ed. 2000).

fidgets." Plaintiff's Brief, p. 5. The Court notes that counsel's brief is not a source of reviewable evidence. 42 U.S.C. § 405(g) ("The court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") (emphasis supplied). Moreover, there is no requirement in the regulations that an ALJ comment on a claimant's demeanor at a hearing.

### e.  The ALJ Did Not Violate Provisions of the HALLEX

Plaintiff also argues that the ALJ "violated HALLEX II-1-11-12" when he failed to reference "the fact that the claimant was found disabled by Columbia County Department of Social Services." Plaintiff's Brief, p. 5. Plaintiff's argument fails on several grounds. First, HALLEX II-1-11-12 does not appear to exist. Second, even if the HALLEX section existed, other courts have found that the provisions of HALLEX are not binding upon the Social Security Administration. See, e.g., Martinez v. Astrue, No. 3:07-CV-699, 2009 WL 840661, at *2 n.1 (D. Conn. Mar. 30, 2009) ("Certain manuals, including HALLEX, are not regulations and therefore are not binding on the Social Security Administration."); see also Schweiker v. Hansen, 450 U.S. 785, 790 (1981) ("But the Claims Manual is not a regulation. It has no legal force, and it does not bind the SSA. Rather, it is a 13-volume handbook for internal use by thousands of SSA employees . . ."). And finally, there is no indication in the record that Columbia County found Plaintiff disabled. Instead, the page Plaintiff refers to in the record is a letter filled out, presumably by Dr. Kudria,[16] indicating that Plaintiff cannot participate in certain

---

[16] The addressee is left blank and the letter is not signed by Dr. Kudria, but the questions about Plaintiff's abilities were answered and the letter appears in a section of the record containing other evidence from

types of work training (R. at 162).

## IV.    Conclusion

Based on the foregoing, the Court recommends that Plaintiff's motion for

judgment on the pleadings should be DENIED, and Defendant's motion for judgment on

the pleadings should be GRANTED.


Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge


DATED: May 12, 2009

Syracuse, New York

### Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the

Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of

---

Dr. Kudria's office. See (R. at 160-62). Therefore, the Court assumes that Dr. Kudria answered the questions posed in this letter from Columbia County.

Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.


DATED: May 12, 2009

Syracuse, New York


Victor E. Bianchini
United States Magistrate Judge